IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

MARCIA ANN CARR, *et al.*

    Plaintiffs,

v.

PUERTO RICO PORTS AUTHORITY, *et al.*

    Defendants.

**Civil No. 10-1170(SEC)**

**OPINION and ORDER**

Before the Court are the above-captioned defendants' ("Defendants") "Motion for Partial Dismissal" (Docket # 90), and plaintiffs' ("Plaintiffs") opposition thereto (Docket # 95). After reviewing the filings and the applicable law, the Court **GRANTS** Defendants' motion.

**Factual and Procedural Background**

This is a diversity tort-suit, where plaintiffs Marcia Ann Carr and her husband (both Canadian citizens) seek redress for damages arising from a fall at the Luis Muñoz Marin International Airport. Docket # 4. Defendants are the owner of the airport, the Puerto Rico Ports Authority (the "Ports Authority"); the independent contractor in charged of cleaning and maintaining the common areas of terminal 34, North Janitorial Services Inc. ("North Janitorial"); and North Janitorial's insurance company, Seguros Triple-S Inc. Id.

A detailed discussion of the facts underlying this suit is provided in a prior Opinion and Order available at Carr v. Puerto Rico Ports Authority, 2011 WL 1484158 (D.P.R. Apr. 15, 2011).[1] Accordingly, to adjudicate the matters now pending, the following uncontested facts suffice: (1) Carr fell on a wet floor within terminal 34 of the airport; (2) no signs warned the public about the conditions of the floor; (3) the contract between the Ports Authority and North

---

[1] The Court presumes familiarity with this decision.

**CIVIL NO. 10-1170(SEC)**  Page 2

Janitorial encompassed the area where the fall *allegedly* happened; and (4) the contract required North Janitorial to wash and dry the floors at the terminal, to place warning signs in wet floor areas, and to take other precautionary measures to prevent slip-and-falls. See Docket ## 52-1 and 63.

Previously, Plaintiffs moved for summary judgment regarding Defendants' liability, but the Court denied the motion, concluding that Plaintiffs had failed to satisfy the requisite burden at that stage. Docket # 77. Shortly thereafter, at a case management and settlement conference, the Court informed the parties that "the undisputed facts plaintiffs presented in their motion did not appear to support a cause of action against co-defendant the Ports Authority." Docket # 82. Accordingly, to rule out the possibility of trying an unnecessary issue, and to hear the parties' positions, the Court ordered the filing of supplemental motions regarding the Ports Authority's liability. Id.

Defendants captioned their motion as "Motion for Partial Dismissal." Docket # 90. There, Defendants accept that they had a principal/contractor relationship as to the area where Plaintiffs *allege* that the accident happened. Id. at ¶ 3. Nevertheless, they argue that the Ports Authority would not be liable for the fall if it happened where alleged, because Puerto Rico law—i.e., Pons Anca v. Engebretson, 160 P.R. Dec. 347 (2003)—precludes the imposition of liability upon a principal for the negligence of an independent contractor. Id. at ¶ 6.

Defendants next contend that Plaintiffs have presented no evidence to show that the Ports Authority's direct negligence caused the fall. Id. Specifically, they aver that (1) "[P]laintiffs have not alleged that the Ports Authority knew or should have [known] about the conditions which allegedly caused the accident"; (2) "the Ports Authority failed to adequately monitor North Janitorial's performance pursuant to the terms of the contract"; and (3) "all of plaintiffs' evidence is directed at establishing the alleged liability on the part of North Janitorial Services Inc." Id. at at ¶ 7. Thus, Defendants conclude that "the cause of action against Port[s] Authority must be dismissed with prejudice." Id. at ¶ 8.

**CIVIL NO. 10-1170(SEC)** Page 3

---

Plaintiffs oppose these contentions. Docket # 95. In doing so, they direct the Court to First Circuit authority holding that the Ports Authority's duty to maintain its premises in a reasonable safe condition is nondelegable and that an independent contractor's negligence can be imputed to its principal. Id. at pgs. 7-8 (*citing* Colmenares Vivas v. Sun Alliance Ins. Co., 807 F.2d 1102, 1106 (1st Cir. 1986) and Wells Real Estate Investment Trust II, Inc. v. Chardon/Hato Rey Partnership, S.E., 615 F.3d 45, 58 (1st Cir. 2010)). Nonetheless, conceding that these cases directly contravene Puerto Rico Supreme Court authority, Pons, 160 P.R. Dec. 347, and thus are inapplicable under Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938), Plaintiffs posit that "Pons does not necessarily relieve principals such as the Ports Authority from claims of their own direct negligence." Docket # 95, at p. 8. Therefore, Plaintiffs state that "to the extent that the Ports Authority knew or should have known about the dangerous condition of the wet floor, it is directly liable to Plaintiffs." Id. at p. 9.

Plaintiffs also argue that the position Defendants have adopted in their supplemental motion contradicts statements made in prior submissions to the Court. Id. at p. 6. In this regard, Plaintiffs argue that Defendants' allegation "that North Janitorial had the responsibility of cleaning and maintaining the area of the terminal where Plaintiff *claims* she fell" contradicts Defendants' prior remarks that "North Janitorial's contract with the Ports Authority [did not] include[] [the] cleaning and maintenance of the area where the accident occurred." Id. (emphasis added).[2]

Lastly, Plaintiffs aver that

> [i]t would be a contradiction for the Court to first hold [in its Opinion and Order denying summary judgment] that it [was] not clear who had the responsibility to maintain the area where Plaintiff fell, and then turn around

---

[2] A cursory reading of Defendants' statements suffice to discard Plaintiffs' contentions on this front. Simply put, accepting responsibility for the area where Plaintiffs *allege* the accident happened, is different from accepting that the accident happened where alleged. Therefore, the Court need not address this argument further.

**CIVIL NO. 10-1170(SEC)**                                                                                      Page 4

>       and grant Defendants' Motion for Partial Dismissal based on the conclusion
>       that it is uncontested that the fall took place in an area under North
>       Janitorial's exclusive care.

Id. Accordingly, Plaintiffs take the position that if the Court dismisses their claims against the Ports Authority, it "must necessarily also grant Plaintiffs' Motion for Summary Judgment as to North Janitorial." Id. at p. 7.

Below, the Court will address Defendants' Motion For Partial Dismissal first. Then, it will consider Plaintiffs' arguments in connection with the Court's prior Opinion and Order.

**Standard of Review**

Pursuant to Fed. R. Civ. P. 12(d), the Court must treat a motion to dismiss that presents matters outside the pleadings as a motion for summary judgment under Rule 56, unless the Court excludes the arguments that stray from the pleadings. See Fed. R. Civ. P. 12(d). Defendants' "Motion for Partial Dismissal" is based on the argument that discovery has failed to produce any evidence to support a claim against the Ports Authority. See Docket # 90. Application of the summary judgment standard is therefore warranted.[3]

*Summary Judgment*

The standard for summary judgment was expounded in the Court's previous Opinion and Order (Docket # 77), but the Court will restate it here, with further discussion of the Supreme Court's opinion in Celotex Corp. v. Catrett, 477 U.S. at 323-24.

---

[3] Plaintiffs argue that Defendants' "motion cannot be converted into one for summary judgment since it lacks any supporting evidence or citations to the record and plainly fails to meet the clear local rules requirements." Docket # 95. But as just stated, Defendants premised their motion on the fact that the record contains no evidence to support Plaintiffs' cause of action against the Ports Authority; thus, no record citations are needed. See Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Moreover, the motions currently pending were filed at the Court's behest, after an *in camera* discussion with the parties about whether the cause of action against the Ports Authority was proper for summary adjudication. In other words, Plaintiffs were well aware that the Court would employ the summary judgment standard to decide the parties' submissions.

**Civil No. 10-1170(SEC)**                                                                                               Page 5

The Court may grant a motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ramirez Rodriguez v. Boehringer Ingelheim, 425 F.3d 67, 77 (1st Cir. 2005). In reaching such a determination, the Court may not weigh the evidence. See Casas Office Machs., Inc. v. Mita Copystar Am., Inc., 42 F.3d 668 (1st Cir. 1994). At this stage, the court examines the record in the "light most favorable to the nonmovant," and indulges all "reasonable inferences in that party's favor." Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994).

The summary judgment inquiry is grounded in the factual evidence available, since "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." Celotex Corp., 477 U.S. at 323-24. Once the movant has averred that there is an absence of evidence to support the nonmoving party's case, the burden shifts to the nonmovant to establish the existence of at least one fact at issue that is both genuine and material. Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990) (citations omitted). "A factual issue is 'genuine' if 'it may reasonably be resolved in favor of either party and, therefore, requires the finder of fact to make 'a choice between the parties' differing versions of the truth at trial.'" DePoutout v. Raffaelly, 424 F.3d 112, 117 (1st Cir. 2005) (*quoting* Garside, 895 F.2d at 48 (1st Cir. 1990)).

To defeat summary judgment, the opposing party may not rest on conclusory allegations, improbable inferences, and unsupported speculation. See Hadfield v. McDonough, 407 F.3d 11, 15 (1st Cir. 2005) (*citing* Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990). Nor will "effusive rhetoric" and "optimistic surmise" suffice to establish a genuine issue of material fact. Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997). Once the party moving for summary judgment has established an absence of material facts in dispute, and that he or she

**Civil No. 10-1170(SEC)**                                                                                                       Page 6

is entitled to judgment as a matter of law, the "party opposing summary judgment must present definite, competent evidence to rebut the motion." Méndez-Laboy v. Abbot Lab., 424 F.3d 35, 37 (1st Cir. 2005) (*quoting* Maldonado-Denis v. Castillo Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994). "The non-movant must 'produce specific facts, in suitable evidentiary form' sufficient to limn a trial-worthy issue . . . . Failure to do so allows the summary judgment engine to operate at full throttle." Id.; see also Kelly v. United States, 924 F.2d 355, 358 (1st Cir. 1991) (warning that "the decision to sit idly by and allow the summary judgment proponent to configure the record is likely to prove fraught with consequence."); Medina-Muñoz, 896 F.2d at 8 (*quoting* Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 181 (1st Cir. 1989) (holding that "[t]he evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve.")).

"[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue" the movant's summary judgment motion may rely "solely on the pleadings, depositions, answers to interrogatories, and admissions on file." Celotex, 477 U.S. at 324 (internal quotation marks omitted). In such cases, the movant need not accompany the motion with supporting affidavits. Id. The relevant question is whether the nonmovant, who will bear the burden of proof at trial, has pointed to the existence of evidence that could support the necessary elements of her claim. Id. at 322-23. If she has not, "there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. (internal quotation marks omitted); see also Borges *ex rel.* S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 4-5 (1st Cir. 2010).

**Civil No. 10-1170(SEC)**                                                                                             Page 7

**Applicable Law and Analysis**

*Defendants' Motion for Partial Dismissal*

More than seventy years ago, the United States Supreme Court settled the question of what law federal courts are to apply when exercising diversity of citizenship jurisdiction. Erie R.R. Co., 304 U.S. 64. The principle that state-law governs substantive issues in diversity cases has been in place ever since. See e.g., Rodriguez v. Señor Frog's de la Isla, Inc., 642 F.3d 28, 36 (1st Cir. 2011). This principle, commonly known as the Erie doctrine, is premised on two grounds. First, "Congress has no power to declare substantive rules of common law applicable in a state whether they be local in their nature or 'general,' be they commercial law or a part of the law of torts. And no clause in the Constitution purports to confer such a power upon the federal courts." Erie R.R. Co., 304 U.S. at 78. Second, the unbridled authority federal judges enjoyed to apply "general law" in diversity cases created a disuniform body of law, which improperly benefitted parties (most often noncitizens) able to select between state or federal court to litigate a cause of action. Id. at 74-75. This, in turn, "rendered impossible equal protection of the law." Id. at 75.

The Erie doctrine therefore requires this Court to premise its analysis of Defendants' motion on Puerto Rico's tort law. The Puerto Rico Civil Code has governed this area for more than 100 years. It establishes that a "person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." P.R. Laws Ann. tit. 31, § 5141. Case law interpreting this provision abound, and its implications vary depending on the circumstances of each case. Nonetheless, over the years, the Supreme Court of Puerto Rico has endeavored to delineate the scope of responsibility that a principal has for the negligence of its contractor.[4]

---

[4] For an excellent analysis of these cases see Glenda Labadie-Jackson, *Responsabilidad Civil Extracontractual*, 74 Rev. Jur. U.P.R. 897, 902-08 (2005).

**Civil No. 10-1170(SEC)** Page 8

The issue first arose in Mariani v. Christy, 73 P.R. Dec. 782 (1952). There, the Supreme Court recognized, as a general rule, that a principal who exerts no control over the manner in which contracted services are performed would not be liable for damages the contractor causes to third parties. Id. at 798. Ten years later, the Court addressed the issue again in Bonet v. Municipio de Barceloneta, 87 P.R. Dec. 81, 85-86 (1963), stating that liability was possible when the services contracted were inherently dangerous, but the principal had failed to take especial precautions to minimize the risks of damages to third parties. Then, in Barrientos v. Gobierno de la Capital, 97 P.R. Dec. 552, 562 (1969), the Court established that imposing liability was proper if the principal had failed to address foreseeable risks arising from contracted services, regardless of whether such services were inherently dangerous.

Martinez v. Chase Manhattan Bank, 8 P.R. Offic. Trans. 542 (1979) ensued next. There, the Court first reaffirmed the foreseeability standard of Barrientos and emphasized its scope:

> The person who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of harm to a third person, unless special precautions are taken, is answerable for the damages caused by the failure of the contractor to take said precautions, even though the employer may have provided for them in the contract or otherwise.
>
> . . . .
>
> The contractor's employer is not held liable for the latter's ordinary negligence resulting in damages to a third person, nor for failing to follow the routine precautions which a careful contractor should ordinarily take. The employer's liability is concerned with "special risks, peculiar to the work to be done, and arising out of its character, or out of the place where it is to be done, against which a reasonable man would recognize a necessity of taking special precautions. . . . 'Peculiar' does not mean that the risk must be one which is abnormal to the type of work done, or that it must be an abnormally great risk. It has reference only to a special, recognizable danger arising out of the work itself.

Id. Then, the Court also held that liability was proper when the principal derived financial benefits from the services that caused the injury. Id.

**Civil No. 10-1170(SEC)** Page 9

Nevertheless, in Lopez v. Cruz, 1992 P.R.-Eng. 755, 510, a tort-suit against a municipality, the Court limited the financial benefit principle of Chase to private for-profit principals. The Court also clarified that the liability imposed on a principal was not vicarious, but rather on account of the principal's failure "to take the necessary precautions, given the particular risks of a project." Id.

Pons, 160 P.R. Dec. 347 followed in 2003. See Certified Translation provided by Defendants, Docket # 104-1. There, a house owner contracted the cutting of two 60-foot tall palm trees located in front of his house. Id. The contractor had over 25 years of experience cutting tall trees and owned vehicles and the necessary equipment to perform such services. Id. Moreover, before performing the services, the contractor inspected the area to determine the manner in which the palms were to be cut and the precautionary measures needed. Id.

He and two other employees cut the first palm tree; one of them did the cutting while the other two made sure that passersby did not come near the area. Id. Once the first tree laid safely on the ground, the men decided to rest, and left standing against the remaining palm tree a forty-foot ladder being used for the job. Id. Unfortunately, while the workers were away resting, the ladder fell, injuring an eleven-year old girl who was walking by. Id.

The girl's parents filed a tort-suit on her behalf, claiming damages against both the house owner and the contractor. Id. The Court of First Instance found defendants liable, concluding that they had failed to take the necessary precautionary measures to avoid damages to passersby. Id. The Court of Appeals affirmed, and defendants appealed to the Supreme Court of Puerto Rico, where, after a detailed discussion of previous principal/contractor jurisprudence, the house owner was relieved from liability. Id. In so holding the Court stated:

> We understand that the adequate interpretation of the standard of liability for independent contractors, as enunciated in *Martinez v. Chase Manhattan Bank*, *supra*, and applied in *Lopez v. Cataño Mun. Government*, *supra*, must be that the employer must not be held liable for the negligence of the contractor when the same consists in omitting the routing measures

**Civil No. 10-1170(SEC)**                                                                                              Page 10

> of care to carry out the work that has been entrusted to him. Nor must liability be imposed on the employer when the independent contractor's lack of care was not foreseeable by the principal.
>
> On the other hand, when dealing with a project that by its nature implies particular risks, the employer will be liable for the contractor's negligence if he fails to demand in the contract [the] taking [of] the special safety measures that may be necessary or, if they are not included in the contract, if the employer does not exercise due diligence to take such measures himself in some form. . . .
>
> Finally, the employer must not be held liable for the independent contractor's negligence when he exercises due diligence to ensure that the person contracted has the skills and sufficient experience to carry out the work, thus, it is expected that he will take the necessary precautionary measures to avoid the risks that the work can cause. Under those circumstances, it will be understood that the employer has acted as a prudent and reasonable man in delegating the work to a person capable of carrying out the work.

Id.

Under the foregoing standard and based on the undisputed facts of this case, Plaintiffs' claims against the Ports Authority fail. As stated above, the parties agree that the Ports Authority had contracted with North Janitorial for the cleaning and maintenance of certain airport areas, including the spot where Carr alleges she fell. This principal/contractor relationship can hardly be said to encompass inherently dangerous activities. Cf. Pons, 160 P.R.Dec. 347 (cutting two 60-foot tall palm trees was not inherently dangerous); Pacheco v. A.F.F., 112 P.R. Dec. 296 (1982) (electricity-related labors were inherently dangerous); Vda. de Delgado v. Boston Ins. Co., 99 P.R. Dec. 714 (1971) (handling highly flammable substances was inherently dangerous). Moreover, the negligent conduct that produced Carr's fall—failing to place wet floor signs—fell squarely within the bounds of the ordinary. In fact, providing such warnings was among the routine precautionary measures that the Ports Authority contractually required North Janitorial to take. Docket ## 52 and 63, ¶¶ 13-15. Lastly, Plaintiffs have never argued that the Ports Authority failed to exercise due diligence in selecting North Janitorial as

**Civil No. 10-1170(SEC)**                                                                 Page 11

its independent contractor. Under these circumstances, Pons mandates the dismissal of Plaintiffs' claims against the Ports Authority.

In any event, assuming that Plaintiffs had met those requirements, to prevail over Defendants' motion, they also needed to show that the Ports Authority failed to address foreseeable risks. Pons, 160 P.R. Dec. 347. Plaintiffs nonetheless have provided the Court with no evidence whatsoever. Rather, they rest their case against the Ports Authority on the general allegation that "the Ports Authority knew or should have known about the dangerous condition of the wet floor." Docket # 95. Accordingly, with no evidence of record to prove that the Ports Authority acted negligently in connection with Carr's fall, there is no genuine issue of fact to submit to a jury, Celotex, 477 U.S. at 324, and, under Puerto Rico's tort law, Plaintiffs' claims against the Ports Authority must be dismissed.

Plaintiffs' arguments under Colmenares, 807 F.2d 1102 are unpersuasive. As stated above, they cite Colmenares for the proposition that the Ports Authority responds directly for its negligence in connection with Carr's fall. Docket # 95. Plaintiffs, however, have introduced no evidence to support this contention, which at this stage of the proceedings is fatal for their cause of action against the Ports Authority. See Celotex, 477 U.S. at 324. Moreover, Colmenares, which dealt with the applicability of the *res ipsa loquitur* doctrine to a tort-suit filed against the Ports Authority, nowhere mentions the Puerto Rico Supreme Court jurisprudence highlighted above.[5] Furthermore, Colmenares premises its analysis and discussion on common law sources, despite the well-settled principle that "both as to its form and content, the tort law applicable in Puerto Rico is the civil law system." Colmenares, 807 F.2d at 1108, (Torruella, J., dissenting) (*quoting* Valle v. Amer. Inter. Ins. Co., 108 P.R. Dec. 692, 695

---

[5] The *res ipsa loquitur* doctrine is no longer applicable in Puerto Rico. Admor. F.S.E. v. Almacen Ramon Rosa, 151 P.R. Dec. 711, 721, 723 (2000).

**Civil No. 10-1170(SEC)** Page 12

(1979)).[6] Therefore, the precedential value of Colmenares in the context of principal/contractor liability is at best questionable.

Colmenares is problematic for other reasons also. The point is best illustrated in Wells Real Estate Investment Trust II, Inc., 615 F.3d 45, 58, a diversity suit under the laws of Puerto Rico. There, among other things, the Circuit stated that Colmenares stands for the "general [tort] principle that the duty to keep business premises reasonably safe cannot be delegated to a third party." 615 F.3d 58. And that a collorary of this principle is that "a contractor's negligence may be imputed to [a principal] . . . ." Id. Accordingly, even though Puerto Rico law precludes the imposition of vicarious liability in the context of a principal/contractor relationship, Lopez, 1992 P.R.-Eng. 755, the Circuit's reading of Colmenares appears to allow it. This, in turn, opens the door to the possibility of a pre-Erie scenario, where the substantive law governing the outcome of a tort suit varied depending on whether redress was sought in federal or state court. See Erie R.R. Co., 304 U.S. 64. For sound constitutional and equitable reasons, however, the U.S. Supreme Court completely shut this door with Erie. Id. Plaintiffs' contentions under Colmenares therefore fail, and Defendants' motion for Partial Dismissal is **GRANTED**.[7]

*The Court's Previous Opinion and Order*

The Court next considers Plaintiffs' request for reconsideration of the previous Opinion and Order. It is well settled that a federal court has the power to revisit a prior order denying summary judgment *sua sponte*. See Fed. R. Civ. P. 54(b); Geffon v. Micrion Corp., 249 F.3d

---

[6] The First Circuit has abided by this principle in numerous occasions. See e.g., Medina & Medina v. Country Pride Foods, Ltd., 858 F.2d 817, 819 (1st Cir. 1988); Federal Ins. Co. I.C. v. Banco de Ponce, 751 F.2d 38, 40 (1st Cir. 1984) (Breyer, J.); Republic Sec. Corp. v. Puerto Rico Aqueduct & Sewer Authority, 674 F.2d 952, 958 (1st Cir. 1982) (Breyer, J.).

[7] The complaint appears to raise a claim against the Ports Authority under Art. 1803, P.R. Laws Ann. tit. 31 § 5142, which imposes vicarious liability on employers for the negligence of its employees. Docket # 4. Plaintiffs, however, have never argued, much less put forth evidence, that Ports Authority's employees were involved in the events leading to Carr's fall. Therefore, this cause of action is also **DISMISSED**.

**Civil No. 10-1170(SEC)**                                                                                           Page 13

29, 38 (1st Cir. 2001); see generally 18B Wright, Miller & Cooper, Federal Practice and Procedure § 4478.1 (2d ed. 2002 | Supp. 2011). But whether under the banner of the law-of-the-case doctrine or otherwise, trial courts are generally reluctant to reconsider previously litigated issues, for the sake of judicial efficiency. See Wright & Miller § 4478.1 at pp. 692-97. Moreover, "[u]nlike res judicata, the rule is not an inexorable command, but is to be applied with good sense." Major v. Benton, 647 F.2d 110, 112 (10th Cir. 1981) (internal quotation marks omitted). For example, trial courts usually are more amenable to altering their previous rulings in order to achieve the right result when no judgment has been entered. Wright & Miller § 4478.1, p. 694. Likewise, the development of new facts may justify reconsideration of a prior order made when the facts of the case were less developed. Id. at p. 695. At any rate, that the Court has discretion to reconsider a prior ruling is therefore "undoubted." See Wright & Miller § 4478.1, p. 693.

As stated above, Plaintiffs urge the Court to reconsider its previous Opinion and Order as to North Janitorial liability, arguing that dismissing their claims against the Ports Authority "on the conclusion that it is uncontested that the fall took place in an area under North Janitorial's exclusive care" contradicts the Court's previous finding that "it [was] not clear who had the responsibility to maintain the area where Plaintiff fell . . . ." Docket # 95, at p. 6. This argument misses the mark, however.

Plaintiffs' cause of action against the Ports Authority is dismissed because the record contains no evidence showing that the Ports Authority was negligent in connection with Carr's fall. Both the exact location of the accident as well as North Janitorial's responsibilities over such location continue to be disputed facts for the jury to decide. Therefore, with no change in the record available at this stage, the Court remains unable to determine whether North Janitorial was negligent in connection with Carr's fall, and the prior Opinion and Order stands.

**Civil No. 10-1170(SEC)**                                                                                                          Page 14

Nevertheless, a few remarks regarding some of Defendants' contentions are in order.[8] One of their line of defenses is that the person mopping the floor near the accident area was not a North Janitorial employee. See Docket # 63, ¶ 10. So far, however, Defendants have provided the Court with no evidence to support this contention. Instead, North Janitorial responds to Plaintiffs' version of the facts by quibbling that the deposition testimony states that there was a "gentleman" mopping the floor. Docket # 63. In other words, the word "gentleman" is all that North Janitorial has to go on to contest Plaintiffs' allegations that a North Janitorial employee had been carelessly mopping the area where Carr slipped and fell.

It strains credulity to believe that some "gentleman" desultorily decided to pick up a mop and start cleaning the airport terminal; that he had access to the requisite cleaning supplies (in a secure airport terminal, no less); that he had access to "wet floor" signs; and that, despite his compelling desire to mop the terminal floor without a reason to do so, he found the task so dull that he had to entertain himself by blabbing away on his phone. Similarly, it pushes credulousness past the breaking point the idea that the person who notified the "gentleman" about Carr's fall and hurriedly placed a "wet floor" sign beside her was not a co-worker. Accordingly, if at trial Plaintiffs were to succeed in showing that the accident happened where they allege, adjudicating liability against North Janitorial will likely become a mere formality. See P.R. Laws Ann. tit. 31 § 5142; see also Torres-Perez v. Medina-Torres, 113 P.R. Dec. 72, 76 (1982). The Court strongly encourages the parties to consider these observations when determining the risks and costs involved in continuing forward with this case.

---

[8] The discussion that follows is based on the uncontested facts of the case, as stipulated by the parties in prior submissions.  See Docket ## 52-1 and 63.

**Conclusion**

In light of the foregoing, Defendants' motion is **GRANTED**, and all claims against the Ports Authority are **DISMISSED with prejudice**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 18th day of August, 2011.

                                          s/ *Salvador E. Casellas*
                                          SALVADOR E. CASELLAS
                                          U.S. Senior District Judge